IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02888-KLM

ARIANA LYNN MUCILLI,

  Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

  Defendant.
_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court[1] on the **Social Security Administrative Record** [#11],[2] filed January 8, 2019, in support of Plaintiff's Complaint [#1] seeking review of the decision of Defendant Andrew Saul, Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for supplemental security income benefits pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381 et seq. On February 19, 2019, Plaintiff filed an Opening Brief [#16] (the "Brief"), and Defendant filed a Response [#17] in opposition. No reply was filed. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court has reviewed the entire case file and the applicable law and is sufficiently advised

---

  [1] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See* [#13, #18].

  [2] "[#11]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

in the premises. For the reasons set forth below, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## I. Factual and Procedural Background

Plaintiff alleges that she has been disabled since March 10, 2016. Tr. 14 (discussing amendment of alleged onset date from March 9, 1998).[3] On March 8, 2016, Plaintiff filed an application for supplemental security income under Title XVI. Tr. 14. On March 8, 2018, an Administrative Law Judge (the "ALJ") issued an unfavorable decision. Tr. 27.

The ALJ determined that Plaintiff had not engaged in substantial gainful activity ("SGA") since March 8, 2016, the application date. Tr. 17. The ALJ found that Plaintiff suffers from three severe impairments: (1) vagal nerve injury with resultant gastroparesis, status-post gastro pacer placement; (2) gastroesophageal reflex disease ("GERD"); and (3) depression. Tr. 17. However, the ALJ also found that Plaintiff does not have an impairment or combination of impairments which meets or medically equals "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." Tr. 17. The ALJ next concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following abilities and limitations:

> [C]an never climb ladders, ropes or scaffolds; should never be exposed to unprotected heights; can understand, remember and carry out tasks of limited complexity consistent with unskilled work; can make simple work-related decisions; can tolerate occasional brief interaction with supervisors and co-workers; and, can have no interaction with the general public.

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 11 through 11-18 by the sequential transcript numbers instead of the separate docket numbers.

Tr. 19. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff had no past relevant work, but found that there are jobs which exist in significant numbers in the national economy which Plaintiff can perform, including the representative occupations of mail clerk, routing clerk, and inspector and hand packager. Tr. 25-26. The ALJ therefore found Plaintiff not disabled at step five of the sequential evaluation. Tr. 25. The ALJ's decision has become the final decision of the Commissioner for purposes of judicial review. 20 C.F.R. § 416.1481.

## II. Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act]

requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo.*" *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

**A.    Legal Standard**

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20

C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity." *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142). "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work." *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142). "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

**B.    Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). However, the ALJ need

not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1140 (internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Further, evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. Analysis

Plaintiff requests judicial review of the ALJ's decision denying her supplemental security income. *Brief* [#16]. First, Plaintiff argues that the ALJ erred by concluding "that certain of [Plaintiff's] medical complaints were nonsevere." *Id.* at 22-24. Second, Plaintiff argues that the ALJ "erred by failing to take into account the combined nonexertional effects of [Plaintiff's] severe and nonsevere impairments when she assigned the [RFC] limitations." *Id.* at 24-28. Third, Plaintiff argues that "the ALJ erred by failing to make adequate findings at step four regarding the functional effects of [Plaintiff's] subjective symptoms, including pain, and by failing to assign restrictions in her RFC related to those subjective symptoms." *Id.* at 28-30. The Court addresses each argument in turn.

A.   **Step Two: Severity of Medical Impairments**

Plaintiff takes issue with the ALJ's determination that certain of Plaintiff's medical complaints, "including a history of cholededochal cysts, . . . hiatal hernia surgery, mild ashtma and allergic rhinitis," were not "severe" at step two. *Brief* [#16] at 22. However, Plaintiff also "concedes that in many cases a failure to find an impairment severe does not merit reversal, because the ALJ has the opportunity to correct the error when she considers both severe and nonsevere impairments in assigning the RFC." *Id.* at 24 (citing *Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013)).

The Tenth Circuit Court of Appeals has addressed how an ALJ's purported error at step two in failing to find a specific impairment to be "severe" is harmless so long as the ALJ found at least one other impairment to be "severe" and thus proceeded to later steps of her analysis:

> An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c)[; *see also* 20 C.F.R. § 416.920(c)]. A claimant must make only a *de minimis* showing to advance beyond step two. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). To that end, a claimant need only establish, and an ALJ need only find, one severe impairment. *See Oldham v. Astrue*, 509 F.3d 1254, 1256-57 (10th Cir. 2007) (noting that, for step two, the ALJ explicitly found that the claimant "suffered from severe impairments," which "was all the ALJ was required to do"). The reason is grounded in the Commissioner's regulation describing step two, which states: "If you do not have a *severe* medically determinable physical or mental impairment . . . or a combination of impairments that is severe . . . , we will find that you are not disabled." 20 C.F.R. § 404.1520(a)(4)(ii) (emphasis added)[; *see also* 20 C.F.R. § 416.920(a)(4)(ii)]. By its plain terms, the regulation requires a claimant to show only "*a* severe" impairment—that is, one severe impairment—to avoid a denial of benefits at step two. *Id.* (emphasis added). As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step. Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe. Here, the ALJ found six other impairments severe.

*Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). In the instant case, the ALJ found three other impairments to be severe. Tr. 17. Thus, the ALJ found that Plaintiff could not conclusively be denied benefits at step two and proceeded to steps three and four of her analysis. Thus, Plaintiff's argument that the ALJ erred at step two "fails as a matter of law." *Allman*, 813 F.3d at 1330.

**B.    Step Four**

    **1.    Subjective Symptoms**

The Court turns to Plaintiff's third argument next, that the ALJ failed to properly account for Plaintiff's subjective symptoms of pain, fatigue, and nausea in connection with the RFC assessment. *Brief* [#16] at 29-30.

Pursuant to 20 C.F.R. § 416.929(c)(3), an ALJ has the "obligation to consider subjective allegations" by examining such factors as:

> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

The issue of pain was repeatedly raised by Plaintiff during the hearing before the ALJ. She testified that she could not remain at an apprenticeship at a body-piercing shop for more than 2-4 hours "[b]ecause my stomach always hurt, and I couldn't eat or drink if I was there because I'd hurt, and I'd have to leave, so that's as long as I could last." Tr. 50.

She said that her pain would get worse over the course of the day; in other words, when she went into the shop, her pain would be at a certain level, but after a few hours it would be greater. Tr. 50. She testified that she would lie down about four hours a day for about an hour at a time, because she could "only lay down for so long without it hurting." Tr. 51. Typically, she does not sleep during these times because sleeping hurt her stomach. Tr. 53. She testified that if she stands for too long, her gastric pacer shocks her, "and that hurts. It's hard to deal with." Tr. 52 (also stating that the pain "lasts about ten minutes"). She also testified that she does not take pain medication because it makes her stomach not work. Tr. 43.

In her decision, the ALJ first noted that both Plaintiff and her mother testified to Plaintiff's "chronic abdominal issues including stomach pain, cramping and bowel frequency" and that Plaintiff "has a history of pacemaker placement which sometimes shocks her and causes pain." Tr. 20. The ALJ also referred to a variety of medical records mentioning Plaintiff's pain. Tr. 22. Treatment records from early 2016 show that Plaintiff took "medication as needed for abdominal pain but this did not appear to be a serious complaint." Tr. 22. Treatment records from mid-2016 "indicate continued abdominal pain." Tr. 22. Treatment records from late 2016 show that she was "still with abdominal pain and a reported inability to eat more than one meal a day." Tr. 22. In early 2017, she "reported waking up sometimes during the night due to pain." Tr. 22. The ALJ noted that in late 2017 she "apparently had an adjustment made to her pacemaker and experienced a resolution of abdominal pain following this." Tr. 22 (citing Tr. 999-1016). However, this last statement by the ALJ appears to have been taken out of context. Rather, the pain in this medical record refers to pain from the positioning of Plaintiff's gastric pacer, Tr. 1005, and

-9-

the pain that was resolved from the adjustment was the pain she experienced from its position in her abdomen, Tr. 1003. Indeed, she continued to report abdominal cramping after the repositioning, even though the pain from the position of the pacer itself was resolved. Tr. 1003. Thus, there does not appear to be any indication from the ALJ's discussion that Plaintiff's abdominal pain has been resolved.

Plaintiff also testified at length about her fatigue at the hearing before the ALJ. She stated that she takes a medicine called Bentyl, which is a muscle relaxer for her bowels but which makes her "really tired all day." Tr. 45. She said that she gets about six hours of sleep at night, and that her sleep is interrupted about six times per night on average to go to the bathroom, even when she takes Ambien to help her sleep. Tr. 43-44. She testified that this amount of sleep is not enough for her, and that she is "tired most of the day, like I need to go to sleep more, but I can't sleep during the day because it hurts" her stomach. Tr. 53.

The ALJ said little about Plaintiff's fatigue, merely stating that Plaintiff "reported waking up sometimes during the night due to pain, but was described as having a normal sleep amounts of [sic] her age (19)." Tr. 22. It is unclear what evidence underlies the ALJ's statement that Plaintiff's six hours of sleep is normal for a person her age, and the ALJ does not address how the quality of sleep is affected by getting up, on average, six times in the night. The ALJ also did not address how the Bentyl medication affects Plaintiff's daily fatigue.

Although Plaintiff discussed her pain and fatigue at length at the hearing before the ALJ, there was no mention of nausea. The ALJ mentioned Plaintiff's nausea twice in her opinion, once referring to a medical record from early 2016 where Plaintiff reported having

no nausea, and once referring to a medical record from late 2017 where Plaintiff reported "having a recurrence of bloating and nausea but denied any vomiting or diarrhea." Tr. 22.

Even though the Court does not insist on "technical perfection" in an ALJ's decision, the Court must be able to follow the ALJ's reasoning. *See Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Here, the Court cannot follow the ALJ's reasoning regarding Plaintiff's ongoing issues of pain and fatigue. There do not appear to be any restrictions on these bases in the RFC, there is no support for the ALJ's statement regarding sleep for an average 19-year-old, there is no discussion of the side effects of Plaintiff's medication, and the ALJ's statement on Plaintiff's most recent medical record addressing pain clearly misinterpreted the medical record. To be clear, the Court is not saying that the RFC *must* be amended to reflect issues underlying Plaintiff's pain and fatigue. The Court is merely saying that, in the absence of further discussion, it cannot follow the ALJ's reasoning as to why Plaintiff's RFC does not reflect these issues.

Regarding nausea, the issue is a closer call, given that it was not raised at the hearing and does not seem to have been a major problem, at least based on the argument before the Court. "Were this the only error in this case, [the Court] would hesitate to remand." *Spaulding v. Astrue*, 379 F. App'x 776, 780 (10th Cir. 2010). "[W]hen a claimant is represented by counsel . . . the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins v. Charter*, 113 F.3d 1162, 1167 (10th Cir. 1997) (citing *Glass v. Shalala*, 43 F.3d 1392, 1394-96 (10th Cir. 1994)). Here, Plaintiff had counsel present at the hearing before the ALJ, and there is no

indication found by the Court or suggested by the parties that this issue was ever raised with the ALJ. However, "[b]ecause [the Court] must remand on the issue[s]" of pain and fatigue, "the ALJ should also revisit" and develop the issue of nausea to the extent necessary. See *Spaulding*, 379 F. App'x at 780.

### 2. Combined Nonexertional Effects of All Impairments

Returning to Plaintiff's second argument, Plaintiff here argues that, "while the ALJ may have addressed in the RFC [Plaintiff's] functional limitations that restrict her ability to perform the extertional requirements of the jobs, she ignored or made findings not based on substantial evidence regarding the non-exertional functions necessary for [Plaintiff] to retain her job in the general economy." *Brief* [#16] at 25. Plaintiff's argument addresses issues relating to her daily activities, the apprenticeship at a body-piercing shop, restroom breaks, and attendance requirements/medical appointments. *Id.* at 25-28.

#### a. Daily Activities

With respect to daily activities, the ALJ noted that Plaintiff "denies difficulty with personal care activities despite her medical complaints and also reports taking care of a dog. She can do laundry and cleaning, shopping by computer and in stores, and enjoys doing art. The claimant also goes to movies . . . ." Tr. 20. Plaintiff argues that her evidence regarding her abilities to perform self-care, cook, do laundry, clean, and go shopping "in themselves do not establish that one can engage in light or sedentary work." *Brief* [#16] at 25.

It is true that "sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity." *Krauser v. Astrue*, 638 F.3d 1324, 1333 (10th Cir. 2011); *see also Talbot v. Heckler*, 814 F.2d 1456, 1462-63 (10th

Cir. 1987) ("Ability to drive an automobile, participate in some community affairs, attend school, or to do some work on an intermittent basis does not necessarily establish that a person is able to engage in substantial gainful activity, but such activities may be considered by the [Commissioner], along with medical testimony." (internal quotation marks omitted)). The ALJ here "was entitled to consider [Plaintiff's] regular and fairly extensive activities" and properly did so in making her determinations regarding the consistency of Plaintiff's testimony with medical and other evidence. *Adcock v. Comm'r, SSA*, 748 F. App'x 842, 848 (10th Cir. 2018); Tr. 21. Accordingly, the Court finds no reversible error in connection with the ALJ's discussion regarding Plaintiff's daily activities.

  **b.**  **Part-Time Work**

  Second, Plaintiff argues that the ALJ's reliance on Plaintiff's apprenticeship at a body-piercing shop was error because it does not indicate "an ability to engage in full-time competitive work." *Brief* [#16] at 25. Plaintiff points to evidence that she "worked no more than three days a week, and always fewer hours than a forty hour workweek" and that "her mother often accompanied [her] and she only attended when one specific 'mentor' was present." *Id.* at 26.

  Plaintiff is correct that such evidence is not dispositive of whether she was under a disability precluding full-time work. *See Wells*, 727 F.3d at 1070 (stating that a part-time job "does not necessarily demonstrate" that a claimant has the "ability to sustain" the "demands of full-time work"). However, the ALJ did not err in considering this information regarding Plaintiff's work history. *See, e.g.*, *Lopez v. Barnhart*, 183 F. App'x 825, 830 (10th Cir. 2006) (finding that the ALJ used the correct legal standard and did not err in considering the plaintiff's "regular part-time work during the time period of his alleged

disability"); *see also Kepler v. Chater*, 68 F.3d 387, 389 n.2 (10th Cir. 1995) (noting that whether a claimant's work history is consistent with her application for benefits may be considered). The ALJ found that Plaintiff's work "as an apprentice to a body piercer up to 4 hours a day" was "considered supportive of a capacity to engage in some meaningful work-related social functioning," and the ALJ provided a limitation on this issue in the RFC. Tr. 20, 24; *see also* Tr. 19 (including the following RFC limitation: "can tolerate occasional brief interaction with supervisors and co-workers"). The ALJ relied on Plaintiff's part-time work only as one consideration in conjunction with the other evidence of record, including Plaintiff's testimony and the medical record. Accordingly, the Court finds no reversible error in connection with the ALJ's discussion regarding Plaintiff's apprenticeship.

### c. Restroom Breaks

Third, Plaintiff asserts that the ALJ erred by failing to "include in the RFC a need for restroom breaks in addition to those regularly scheduled because, at the hearing, [Plaintiff] testified that she had not had an 'accident,' and 'was able to hold it.'" *Brief* [#16] at 26. Plaintiff argues that "the ability to avoid embarrassing incidents at home and even school where access to restrooms is on demand does not equate with the ability to do so in a work environment where breaks are regulated and restricted to specific times."[4] *Id.* Plaintiff

---

[4] Plaintiff especially takes issue with the ALJ's determination that Plaintiff could perform work as an inspector and hand packager, because it is "an assembly line job where an unscheduled break is especially problematic." *Brief* [#16] at 26. While this is really a step five argument, the Court notes that, even were it to determine that Plaintiff could not perform this type of work, the ALJ found that Plaintiff could also perform the representative jobs of mail clerk and routing clerk, with 56,500 jobs and 211,200 jobs nationally, respectively. Tr. 26. Although she has not done so here, to be successful, Plaintiff would need to argue that these other two jobs do not exist in significant numbers in the national economy; any such argument here would likely fail. *See, e.g.*, *Jackson v. Colvin*, No. 13-cv-01927-KLM, 2014 WL 5504755, at *8-9 (D. Colo. Oct. 31, 2014) (collecting cases about what constitutes "significant numbers").

argues that her statements about never having an accident and being able to "hold it" should be disregarded in light of "the numerous treatment notes regarding diarrhea, cramping, and urgency" and in light of a physician's assistant she visited in November 2017 who opined in a "Gastritis Medical Assessment" form that Plaintiff would need unscheduled restroom breaks.  *Brief* [#16] at 26.

The Court finds that the ALJ should further explain her reasoning on this issue upon remand.  The Court agrees with Plaintiff that, simply because she can "hold it" does not, by itself, constitute substantial evidence demonstrating that she can "hold it" while moving around and undertaking work activities, or that she can adequately focus on her job when she needs to use the restroom while waiting for her next scheduled break.  In the absence of additional reasoning by the ALJ, the Court cannot find that Plaintiff's statement that she has never had an accident and can "hold it" constitutes more than a scintilla of evidence that Plaintiff does not need unscheduled restroom breaks.  *See Lax*, 489 F.3d at 1084.

### d. Attendance Requirements/Medical Appointments

Plaintiff argues that the frequency of her medical appointments requires her to miss more than one day of work a month, and therefore she cannot retain a competitive full-time job.  *Brief* [#16] at 27-28.  Defendant responds that Plaintiff has failed to provide record citations supporting her argument and, regardless, Plaintiff's argument "ignores that the majority of these doctors' visits and testing procedures occurred well before her alleged onset of disability."  *Response* [#17] at 15.  Plaintiff points to the opinion of Plaintiff's physician's assistant which stated that Plaintiff would need to miss between one and four days of work per month.  *Brief* [#16] at 27; Tr. 24.  The ALJ stated that she did not rely on the form completed by Plaintiff's physician's assistant because a physician's assistant is

not an acceptable medical source as defined by 20 C.F.R. § 416.913(a), and because the opinions in the form were "somewhat internally inconsistent and not supported by the medical and other evidence." Tr. 24.

Plaintiff does not point to any other direct evidence in the record to support Plaintiff's physician's assistant's opinion, but rather provides a survey of the number of medical visits she has had over the several preceding years. *Brief* [#16] at 27-28. As mentioned above, "when a claimant is represented by counsel . . . the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins*, 113 F.3d at 1167. Here, Plaintiff had counsel present at the hearing before the ALJ, and there is no indication found by the Court or suggested by the parties that the issue regarding the frequency of Plaintiff's medical appointments and its effect on work attendance was ever raised with the ALJ. Plaintiff's counsel had an opportunity to ask questions of Plaintiff in order to ensure that the record was adequately developed with regard to Plaintiff's ability to meet work attendance requirements. However, because the Court has found that remand is necessary on other issues, the Court finds that the ALJ should also take the opportunity to address in the first instance, and further develop to the extent necessary, Plaintiff's argument regarding attendance requirements and her medical appointments. *See Spaulding*, 379 F. App'x at 780.

## IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not

disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this Order.[5]

IT IS FURTHER **ORDERED** that Plaintiff is **AWARDED** her costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1). See *Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1153 (D. Colo. 2015).

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter** judgment in favor of Plaintiff and **close** this case.

Dated: December 16, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge

---

[5] The Court finds that this case does not present a proper occasion on which to exercise its discretion and direct the award of benefits. See *Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993). By reversing the ALJ's decision, the Court does not find or imply that Plaintiff is or should be found disabled. See, e.g., *Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1152 n.5 (D. Colo. 2015).